UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
EMPIRE FIRE AND MARINE INSURANCE CO.,          :
:
               Plaintiff,               :
:   04 Civ. 10315 (GEL)
    -against-                         :
:   OPINION AND ORDER
ELRAC, INC. d/b/a Enterprise Rent-A-Car,       :
MACHON CHANA WOMEN'S INSTITUTE, INC.,          :
KIMBERLY SHPITSEK, CHANA MIRIAM LIEDER,        :
and BRACHA GOLDBERG, a minor by and through    :
her parents and/or legal guardians, MOISHE GOLDBERG :
and SHOSHANA GOLDBERG, HAYLEY B.               :
GOLDBERG, RHONDA GOLDBERG and SAMUEL           :
GOLDBERG,                                      :
:
               Defendants.             :
:
------------------------------------------------------------------------x

Evan A. Richman and Deanna E. Hazen, White Fleischner
& Fino, LLP, New York, New York, for plaintiff.

James M. Carman, Carman, Callahan & Ingraham, LLP,
Farmingdale, New York, for defendant Elrac, Inc. d/b/a
Enterprise Rent-A-Car.

Chana Sklar Israel, Suffern, New York, for defendants
Machon Chana Women's Institute, Chana Miriam Leider,
and Kimberly Shpitsek.

GERARD E. LYNCH, District Judge:

      This insurance case requires a clarification of the difference between being excluded

from coverage and simply being uninsured. Plaintiff Empire Fire and Marine Insurance Co.

("Empire") seeks a declaratory judgment that it has not provided excess liability coverage to the

defendants in an underlying negligence action in New York state court. Defendant Elrac, Inc.

d/b/a Enterprise Rent-A-Car ("Elrac") moves for summary judgment on the grounds that a

declaratory judgment is inappropriate, and in the alternative that Empire failed to timely disclaim liability and is therefore estopped from denying coverage. Empire cross-moves for summary judgment, contending that the defendants in the underlying action were never covered by the insurance policy in question, and that it therefore had no duty to promptly disclaim. Defendant's motion will be denied, and plaintiff's motion will be granted.

## BACKGROUND

This case began on August 5, 2001, when a fourteen-year-old girl picking blueberries with other girls from her summer camp got behind the wheel of a van and attempted to drive it. Confused about how the controls worked, she swerved wildly around the parking lot, hitting one of the other campers, who was dragged under the van for some distance into the rows of blueberries. (Richman Aff. Ex. G.)

The victim of the accident, defendant Hayley B. Goldberg, along with her parents, Rhonda and Samuel Goldberg, brought a negligence action in Kings County Supreme Court on July 21, 2004. (Richman Aff. Ex. F.) The Goldbergs named a number of defendants in that underlying action, all of whom are also defendants in this declaratory judgment action. Along with the camper who caused the accident, the Goldbergs sued the summer camp that had sponsored the trip, defendant Machon Chana Women's Institute, Inc. ("Machon Chana"), and a camp counselor, defendant Chana Miriam Leider.[1] Leider, the Goldbergs alleged, had given the keys to the van to the underage driver.[2] (Richman Aff. Ex. F. ¶ 14.) The defendants deny that

---

[1] Leider's name is apparently misspelled "Lieder" in the caption.

[2] The underage driver who caused the accident and her parents have not been served either in this action or in the underlying action, which has been dismissed as against them for failure to serve process. (See Machon Chana Mem. at 5.)

Leider gave the camper her keys or her permission (see Empire Mem. at 5); all of the other facts in this case are undisputed.

The Goldbergs also sued defendant Elrac, which owned the van. On July 31, 2001, the van had been rented from Elrac by defendant Kimberly Shpitsek,[3] a counselor at Camp Machon Chana who apparently did not go on the blueberry-picking trip. Shpitsek was the only person authorized to drive the vehicle under the rental agreement. Shpitsek claims that she "did not rent a vehicle on [her] own behalf," but "on behalf of [her] employer, Camp Machon Chana[,] and [that] this was and is clearly indicated on the rental application." (Shpitsek Aff., un-numbered attachment to Machon Chana 56.1 Stmt.) Although the rental agreement does note that the renter's employer was Camp Machon Chana, however, it identifies Shpitsek as the renter, and bears the emphatic legend, "NO OTHER DRIVER PERMITTED." Defendants have pointed to nothing in the agreement suggesting its coverage extended to other drivers. (Richman Aff. Ex. C.)

When Shpitsek rented the vehicle, she also purchased a supplemental liability insurance policy, issued by plaintiff Empire. (Richman Aff. Exs. E, F.) This was an "excess" policy; it

---

[3] Shpitsek appears in the caption of this case as "Kimberly Shpitsek." On the rental agreement, her name appears to have been hand-printed by someone other than Shpitsek as "Gitteo [sic] Shpitsek Mariam." The signature, apparently in Shpitsek's handwriting, is "Kim Shpitsek." (Richman Aff. Ex. C.) Shpitsek, in an affidavit, indicates that the printed name is not in her handwriting, although the signature is. (Shpitsek Aff.; unnumbered attachment to Machon Chana 56.1 Stmt.) Understandably, there has been some confusion over her name, and even over whether these names all refer to the same person. (See Elrac 56.1 Stmt. ¶ 2 (averring that "Miriam Shpitsek and Kimberly Shpitsek" rented the van); P. 56.1 Counterstmt. ¶ 2 (clarifying that these names refer to one person); Machon Chana Mem. at 3). The original complaint in this action named as a defendant "Miriam Gittel Shpitsek, also known as Miriam Shpitsek, Miriam Kimberly Shpitsek, Kimberly Gittel, Kimberly Gittel Shpitsek, and Kimberly Shpitsek." The parties now appear to agree that these names all refer to the same person.

3

only covered liability for bodily injury in excess of $250,000.  Elrac maintained a $250,000 "Self-Insured Retention" under the policy, meaning that it would be responsible for personal injury liability up to $250,000.  (P. Mem. at 2.)

Prior to the filing of this lawsuit, the only notice Empire gave to the defendants of its objections to coverage was on October 28, 2003, when Empire issued a letter reserving its rights and questioning the applicability of the policy, among other things because the driver who caused the accident was unauthorized.  (Richman Aff. Ex. H.)  The letter was addressed to "Citteo Moriania," apparently an interpretation of a name used to identify Kimberly Shpitsek on the the rental agreement.  It was addressed to the Machon Chana camp at its summer address, but because it was sent in October, when the camp was closed for the winter, no one received it.  (Machon Chana Mem. at 3.[4])  The parties do not explain why Machon Chana was unable to arrange for mail forwarding during the winter months.  In any event, the letter was never received and is not relevant to this summary judgment motion because Empire does not contend that it constituted a timely disclaimer of coverage.

On December 30, 2004, Empire filed this declaratory judgment action, seeking an adjudication of its obligations under the insurance agreement, and Elrac now moves for summary judgment.  Defendants Machon Chana, Shpitsek and Leider (collectively, the "Machon Chana defendants") have submitted a memorandum of law in support of Elrac's motion.[5]  Empire, in

---

[4] Machon Chana's memorandum of law in support of Elrac's motion, like several other documents in this case, has no page numbers.  Where pages are unnumbered, the numbers given in this opinion have been added by the Court and begin with the page following the cover page.

[5] Defendants Bracha Goldberg, Moishe Goldberg and Shoshana Goldberg (the underage driver and her parents) have not been served with process, and the remaining defendants (Hayley B. Goldberg, Rhonda Goldberg and Samuel Goldberg, the plaintiffs in the underlying action)

turn, cross-moves for summary judgment, asking the Court to "declar[e] that Empire does not maintain any obligation to provide insurance coverage with regard to the underlying Goldberg personal injury action." (P. Mem. 19.)

## DISCUSSION

### I. Declaratory Judgment Is Appropriate Here

Defendants argue that it would be inappropriate to grant a declaratory judgment on the facts of this case. The party seeking a declaratory judgment bears the burden of showing that the district court has jurisdiction. See Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993). Jurisdiction exists only if there is an "actual controversy," 28 U.S.C. § 2201(a), which has been defined as one that is "'real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993), quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937).

Defendants make two arguments against the availability of a declaratory judgment here. First, the Machon Chana defendants point out that the state court action has not yet proceeded to judgment, and that it is therefore possible that Empire will never face any liability whatsoever. (Machon Chana Mem. at 5-6.) It has long been well-established, however, that a liability insurer may bring an action for a declaratory judgment against the parties in an underlying lawsuit involving its insured without waiting for the underlying action to proceed to judgment. Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273-274 (1941). "Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future

---

have taken no position on these motions. (The two Goldberg families appear not to be related.)

contingencies that will determine whether a controversy ever actually becomes real." Assoc. Indem. Corp. v. Fairchild Indus., 961 F.2d 32, 35 (2d Cir. 1992).

"That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur." Id. In this case, it is true that Empire is an excess insurer, but the underlying action in this case alleges that the victim and her parents suffered a total of $110 million in damages. (Richman Aff. Ex. F. ¶¶ 23, 27, 31.) Defendants do not attempt to argue that there is no "practical likelihood" of liability exceeding $250,000 in the underlying action. Given the size of the claims in the underlying action, the prospect of Empire facing liability is real enough to make this an actual case or controversy. Cf. E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177-178 (2d Cir. 2001) (finding a "practical likelihood" that excess carriers' policies would be reached). "The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement." ACandS, Inc. v. Aetna Cas. and Sur. Co., 666 F.2d 819, 823 (3d Cir. 1981).

Defendants' second argument is that the questions at issue in this litigation can better be settled in the pending state court proceeding because "this declaratory judgment action involves the identical factual issues that will be necessarily litigated in the underlying matter." (Elrac Mem. at 6.) In effect, they argue that the issuance of a declaratory judgment would not "serve a useful purpose in clarifying and settling the legal relations in issue," Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted), because reaching a

decision in the declaratory judgment action will require adjudication of the issues pending in state court, which would unduly interfere with the state court proceedings.  See id. (inquiring into whether "the legal and factual issues in the instant matter and state court litigations are different.").

Even where a declaratory judgment action and an underlying state action would involve overlapping issues, however, declaratory judgments are appropriate where the ultimate issues are different.  See Provident Bank v. Patterson, 390 U.S. 102, 127 (1968) (stating that although "a critical issue of fact" was the same in the underlying state action as in the federal declaratory judgment action, the "ultimate" issue in the cases was different and the declaratory judgment action should be entertained).  In this case, defendants cannot point to any ultimate issue in common between the two proceedings.

Defendants argue that both cases must address whether the camper who took the van was authorized to do so by Machon Chana or its employees.  Machon Chana asserts that "[t]he gravamen of plaintiff's complaint for declaratory relief is that the policy of insurance that they issued to Machon Chana . . . was somehow breached or violated by defendants Machon Chana, Spitsek, and Leider."  (Machon Chana Mem. at 4; see Elrac mem. at 6.)  This is simply not true.  Plaintiff asks this Court to find that the insurance policy did not cover the underage driver, whether or not she was authorized by the renters to get behind the wheel.  Whether any of Machon Chana's counselors breached the agreement by authorizing an underage driver to use the rented car is thus irrelevant to the instant action.  Handing over the keys to an unauthorized driver may well have been a breach of the rental agreement, but this is not the basis on which plaintiff seeks to deny coverage.

As discussed below, if Empire wished to disclaim liability on the basis of an insured's violation of the rental or insurance agreements, it had a duty to do so promptly. Only if the defendants in the underlying action never came within the scope of coverage is Empire relieved of the duty to timely disclaim. Thus, the only question to be determined in this declaratory judgment action is whether the defendants in the underlying action ever fell within the scope of coverage — not whether they violated the rental agreements. Accordingly, there is no reason to fear that this declaratory judgment action will resolve issues being litigated in state court.

**II.     Because None of the Defendants in the Underlying Action Were Insured, Empire Had No Duty to Disclaim**

Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006). In this case, none of the material facts in this case are disputed; the only question is whether, as a matter of law, the defendants in the underlying action fell within the scope of coverage of the excess liability policy issued by Empire.

No one in this case argues that defendants are substantively entitled to coverage under the contract. They differ only over *why* defendants are outside the contract. Empire contends that they simply are not insureds who have any right to coverage at all. Defendants argue that they are excluded by a provision excluding renters who allow additional drivers to use the rental car. This matters because under New York law, a liability insurer who seeks to avoid coverage of an insured by invoking some contractual exclusion, breach or forfeiture by the insured must disclaim coverage promptly and in writing, which Empire failed to do, or forgo the benefit of the provision in question.

The disclaimer requirement that defendants seek to invoke is codified in New York Insurance Law § 3420(d), which provides:

> If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

Defendants assert that Empire is estopped from denying coverage under this provision because it failed to provide timely notice of its intent to do so. Empire does not argue that it disclaimed coverage in a timely manner.[6] It argues, rather, that there was nothing to disclaim.

The New York Court of Appeals has explained that the requirement of a timely disclaimer does not apply when the putative insured party was never insured to begin with. Zappone v. Home Ins. Co., 55 N.Y.2d 131, 136-138 (1982) (interpreting N.Y. Ins. Law § 167(8) (later re-numbered § 3420(d)). Thus, if the insurance carrier has no insurance contract with the claimant with respect to the vehicle involved, the carrier "is not required to deny coverage or otherwise respond to a claim arising from an accident involving that vehicle except as statute mandates or courtesy suggests." Id. at 137. If, on the other end of the spectrum, the policy covers the driver, the vehicle and the accident, and the carrier denies liability on the basis of

---

[6] The October 2003 letter, addressed to a non-existent person and mailed to an unoccupied address, did not deny coverage, but merely advised the parties that Empire intended to investigate the question. The first time the defendants were actually advised of Empire's contention that coverage did not exist was with the filing of this lawsuit. Cf. First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 66 (2003) (holding that an unexcused 48-day delay is unreasonable as a matter of law).

some breach of the agreement by the insured, "the carrier will be liable unless it disclaims liability because of the insured's breach." Id. at 136.

At the extremes, this principle is easy to understand. An insurer is not required to disclaim coverage where no coverage exists. To hold otherwise "would be to impose liability upon the carrier for which no premium had ever been received by it and to give no significance whatsoever to the fact that automobile insurance is a contract with a named person as to a specified vehicle." Id. Where an insurer refuses coverage to a policyholder because of late notice of claims, on the other hand, it must itself provide prompt notice. Between these extremes, there is a gray area.

Zappone made clear that there is no duty to disclaim liability incurred "neither by the person insured nor in the vehicle insured." 55 N.Y.2d 135. In the present case, the defendants in the underlying lawsuit (i.e., the potential claimants against Empire) were not parties to the insurance agreement. In other words, this case deals with the "vehicle insured," but not the "person insured," and thus falls between the two extremes discussed in Zappone.

Zappone also discussed an intermediate fact-pattern, to which the defendants seek to analogize this case. In this fact-pattern,

> although the person and the vehicle are covered by the policy the circumstances of the accident bring a policy exclusion into play, for example, that the person injured is an employee of the insured whose injury arose out of and in the course of his employment or was injured while an automobile insured as a pleasure vehicle was being used as a public conveyance.

Id. at 136. In this situation, the court said, "the policy covers the driver and the vehicle and the accident would be covered except for the specific policy exclusion and the carrier must deny

coverage on the basis of the exclusion if it is not to mislead the insured and the injured person to their detriment." Id.

These are not bright lines; in a sense, a policy "excludes" all that it does not cover. But the principle is clear: if the insurer seeks to invoke a provision of the policy — whether the language of the policy deems it a "condition" or an "exclusion" — that frees it from liability, it must make a timely disclaimer. If, on the other hand, the insurer correctly believes that the party claiming liability was never covered in the first place, it has no obligation to do so. It is important to note that Zappone did not overly concern itself with the terms used in the agreement; instead, it asked whether the practical effect of the agreement was to place the claimant within the original scope of coverage, or to exclude an otherwise covered claimant by virtue of some specific provision. Thus, applying Zappone, summary judgment must be denied if there is a genuine issue of material fact as to whether any of the defendants in the underlying lawsuit were covered by the policy at issue.

Before discussing the agreement at issue in this case, it is necessary to explain the relationships between the relevant documents, which are not easy to navigate. The insurance agreement comprises three relevant documents: (1) the rental agreement itself (Richman Aff. Ex. C); (2) a "countrywide" policy containing general provisions applicable to insurance contracts entered to in any state (Richman Aff. Ex. D at EM 0065); and (3) a set of New York policy provisions (Richman Aff. Ex. E). The rental agreement was incorporated by the New York policy provisions. (Richman Aff. Ex. D at EM 0089 p. 5 of 7.)

Empire states, and Elrac does not dispute, that the New York provisions "were the operative policy forms in place of the fall-back general Countrywide policy form." (P. 56.1

Stmt. ¶ 6; Elrac 56.1 Counterstmt. ¶ 6.)  Apparently, then, the parties' understanding is that the New York provisions supplanted the countrywide provisions and became the operative agreement between the parties.  The language of the documents themselves, however, is not entirely clear on the way the New York policy and the countrywide provisions interact.  The first page of the packet of documents constituting the insurance policy clearly states that Form EM 0065, the countrywide provisions, is part of the policy: "This declarations page with Policy Provisions, Form EM 0065, and Forms and Endorsements, if any, issued to form a part thereof, complete this policy."  (Richman Aff. Ex. D. at EM 0082.)  Another document in the package, however, lists the "endorsements [that] . . . affect the applicable insurance coverages," and names Form EM 0065, followed by the parenthetical note "(except New York)".  (Richman Aff. Ex. D at EM 3022.)  This second document thus seems to suggest that the countrywide provisions do *not* form part of the agreement in New York.  None of the documents other than the rental agreement have been signed by Shpitsek or anyone other than Empire's representatives, and there is no other evidence in the record concerning the parties' understanding of whether the countrywide provisions were part of the agreement.

      The contradictory language of the agreement seems reconcilable if the New York provisions are intended to supplant the countrywide provisions when the two conflict.  The New York provisions contain no scope-of-coverage provisions whatsoever; although those provisions define the phrase "Named Insured," they nowhere state that the Named Insured is the counterparty to the contract.  It would be highly unusual for an agreement intended to stand alone to lack provisions identifying the parties to the agreement.  It thus seems reasonable to read the New York provisions as supplements to the countrywide provisions, rather than as a

standalone contract. Whether or not the countrywide provisions are read as part of the agreement, however, there is no genuine issue of material fact as to whether anyone other than Shpitsek was covered by the liability insurance policy.

It is true that both the countrywide provisions and the rental agreement contain specific exclusions exempting from coverage losses caused by unauthorized drivers. The rental agreement provides that the "renter" is responsible for all damages "if damage is caused [] by an unauthorized driver" (Richman Aff. Ex. C), and that use of the vehicle by anyone other than authorized drivers would be "[a] violation of the contract." (Id. § 13.) The countrywide provisions similarly contain a list of "EXCLUSIONS," among which is: "Loss arising out of the operation of the 'rental vehicle' by any driver who is not an 'insured.'" (Richman Aff. Ex. D.) As in Zappone's intermediate fact-pattern, it thus appears that specific policy provisions excluded the circumstances of this accident.

This does not end the analysis, however, because it is entirely possible that an insurance policy could be written in such a way that a person never covered by the policy could also be excluded by a particular provision. For example, a policy could say, "This policy excludes everyone it does not cover." Such a provision would not entitle complete strangers to make claims against the insurance company and receive coverage if no timely disclaimer issued. The injuries in this case are certainly excluded from coverage by the explicit exclusions discussed above; the question is whether those exclusion were necessary as to the defendants in the underlying action, and the record shows that they were not.

The policy issued by Empire makes clear by its terms that it provides insurance only to authorized renters. The rental agreement, incorporated into the New York provisions by their

terms, states that it is a contract "between Renter and Owner." (Richman Aff. Ex. C.) The countrywide provisions contain a section titled "LIABILITY INSURANCE," which defines the scope of coverage. (Richman Aff. Ex. D at EM 0065 p. 1 of 6.) In a sub-section titled "WHO IS AN INSURED," the countrywide provisions state, "Only the following are insureds under this policy," and identifies "[t]he 'Rentee'" who entered the rental agreement and paid for supplemental insurance and "[a]dditional authorized drivers whose names appear on the 'rental agreement.'" (Id.) In the same section, the countrywide provisions also note that "[t]he following are not insureds under this policy. . . . c. Any driver who is not an authorized driver under the terms of the "rental agreement", or whose name does not appear on the "rental agreement". (Richman Aff. Ex. D, at EM 0065 p. 2 of 6.)

As noted above, the countrywide provisions may have been supplanted by the New York provisions. Even if so, however, this is not a case where "the policy covers the driver and the vehicle and the accident would be covered except for the specific policy exclusion." 55 N.Y.2d at 136. The agreement is clearly intended to insure the renter of the automobile, and not unnamed other parties with whom the renter is associated. The rental agreement identifies the parties to the contract, and the defendants have offered no evidence suggesting that anyone other than the Kimberly Shpitsek, the renter, was covered by the agreement.[7] Therefore, under Zappone, Empire had no duty to inform anyone else that it was disclaiming coverage. As

---

[7] The defendants' statement that "[t]he premium for the coverage was purchased by the Machon defendants when they rented the vehicle" (Elrac Reply at 3), is misleading. The Machon Chana defendants did not purchase anything; Kimberly Shpitsek was the only signer on the rental agreement (Richman Aff. Ex. C) and therefore the only insured.

Zappone noted, "automobile insurance is a contract with a named person as to a specified vehicle." 55 N.Y.2d at 136. The same is true of the liability insurance purchased here.

This case nicely illustrates the difference between an exclusion and a lack of coverage. The only person insured was Kimberly Shpitsek, the lone signer of the rental agreement. If an unauthorized driver used the car, the contract was violated, and even Shpitsek would not be covered under the "Exclusions" provision. It is for this reason that the exclusion is not redundant. As applied to the unauthorized driver herself, the exclusion for "[l]oss arising out of the operation of the 'rental vehicle' by any driver who is not an 'insured'" is unnecessary. Since she is not an "insured" in the first place, she is not covered at all. As applied to Shpitsek, however, who *is* insured, the exclusion matters, because it precludes coverage — subject to compliance with New York's disclaimer notice statute — for losses caused by use of the car by an unauthorized driver. In this situation, it would be the exclusions provisions that excluded Shpitsek from coverage, while the unauthorized driver herself — and all other potentially liable parties — would have no claim against the insurer for the simple reason that they were never insured in the first place.

Because Shpitsek was the lone insured, if she were facing liability in the underlying case, Empire would have been obliged to cover her excess liability unless it issued a timely disclaimer to Shpitsek. The question of Shpitsek's possible claims against Empire may be left for another day, however, because Shpitsek is not a defendant in the underlying lawsuit. (See Richman Aff. Ex. F.; Machon Chana Mem. at 4.) As she presently faces no liability, there is no need to adjudicate her rights with respect to Empire. For present purposes, there is no question of material fact concerning whether any of the defendants in this action who are also defendants in

15

the underlying action — i.e., any of the people as to whose rights Empire's motion for summary judgment asks this Court to delineate — was insured by the policy.[8]  They were not.

There is ample New York precedent establishing that an insurer need not disclaim coverage to protect itself from claims by individuals who are not within the scope of coverage because they are not authorized to use the insured vehicle.[9]  In Jasper Corp./Celotex Corp. v. Dunikowski, 229 A.D.2d 424 (2d Dep't 1996), for example, the Appellate Division considered a case of injury that resulted when the insured's teenage son, who was not authorized to use his father's company car, caused an accident.  Id. at 426.  The company's insurance policy provided coverage to "anyone . . . while using with [the company's] permission a covered auto."  Id. at 425.  The court held that the insurer's "failure to provide a timely denial of coverage cannot estop it from raising its defense of noncoverage."  Id. at 426.

Similarly, in Katz v. Allstate Ins. Co., 96 A.D.2d 930 (2d Dep't 1983), the Appellate Division concluded that timely disclaimer was not required as to injuries caused by a thief who had stolen the insured's car:

---

[8] Although the Complaint in this action asks the Court to make a number of declarations, including a declaration that the underlying occurrence was not covered under the policy, the summary judgment motion asks only that the Court declare "that Empire does not maintain any obligation to provide insurance coverage with regard to the underlying Goldberg personal injury action."  (P. Mem. at 19.)  Shpitsek is not a party to the underlying personal injury action, so the motion does not require the Court to adjudicate Shpitsek's rights.

[9] Defendants cite a recent case, New York Cent. Mut. Fire Ins. Co. v. Aguirre, 7 N.Y.3d 772 (2006), which they argue "directs that Empire be compelled to provide coverage." (Elrac Reply at 3.)  Aguirre, however, merely held that a "policy's requirement to fill out and return a proof-of-claim form is an exclusion or a condition of coverage," as the insurer in that case conceded.  Id. at 774.  In that situation, of course, the court held that a timely disclaimer was required, but this does nothing to resolve the question of whether defendants in the underlying action in this case were excluded from coverage by a specific provision or were simply uninsured.

> We agree with the trial court's conclusion that no written notice of disclaimer was required here when, at the time of the accident, the insured's vehicle had been stolen and was being operated by the thief without the knowledge or consent of the owner, and plaintiffs were aware from the inception that the vehicle had been stolen and was being operated by the thief. The policy clearly never contemplated any coverage while the vehicle was in the hands of a thief. Contrary to plaintiffs' contention, this is not a situation where both the driver and the vehicle were covered, but there was no insurance by reason of exclusion; rather, there is no insurance protection here by lack of inclusion, and written notice was, therefore, not required.

Id. at 931 (internal quotation marks omitted). See also Allstate Indem. Co. v. Nelson, 285 A.D.2d 545, 546 (2d Dep't 2001) ("Since the owner's insurance policy did not provide coverage because the vehicle was operated without the owner's consent, a prompt notice of disclaimer was not required" (internal quotation marks omitted)); Aetna Cas. & Sur. Co. v. Hines, 102 A.D.2d 725, 726 (1st Dep't. 1984) ("The possible existence of insurance on that vehicle would in no sense constitute an exclusion from coverage otherwise paid for and included; rather the absence of insurance is an essential prerequisite for the existence of coverage under the uninsured motorist endorsement of the policy.").

In sum, no one but Shpitsek — who is not facing liability in the underlying action, and whose rights will therefore not be adjudicated in this declaratory judgment action — was within the scope of the coverage, and Empire therefore owed no duty to issue a prompt disclaimer of coverage to anyone but her.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. # 19) is denied, and plaintiff's cross-motion for summary judgment (Doc. # 23) is granted.

SO ORDERED.

Dated: New York, New York
       December 18, 2006

_____
GERARD E. LYNCH
United States District Judge